OPINION
{¶ 1} Plaintiff-appellant, Michelle Cooper ("Cooper"), appeals from the Franklin County Court of Common Pleas' entry of summary judgment in favor of defendant-appellee, Valvoline Instant Oil Change ("Valvoline"),[1] on Cooper's negligence claim. For the following reasons, we affirm. *Page 2 
 {¶ 2} This action arises out of injuries that Cooper sustained on December 20, 2003, when she slipped and fell on an icy sidewalk adjacent to the Valvoline store on Hamilton Road in Whitehall, Ohio. On that date, Cooper drove to the Valvoline store and into the service bay to have her vehicle serviced. The weather conditions were "a mix between snow and ice," and the roads were "snowy and icy." (Cooper Depo. ["Depo."] at 16.) Cooper's boyfriend drove separately to the Valvoline store and parked along the side of the store. When Cooper walked out the front door of the Valvoline store toward her boyfriend's car, she "stepped two, maybe three steps out the door" and fell on the icy sidewalk. Depo. at 18. According to Cooper, the sidewalk was cleared of snow, and it "looked like someone had just shoveled." Depo. at 21. Cooper testified that there was nothing unusual about either the sidewalk or the formation of the ice upon which she fell. After her boyfriend helped her back into the store, Cooper heard the Valvoline manager say to another employee: "I thought I told you to go down and get some salt for that." Depo. at 24.
 {¶ 3} Cooper filed a complaint in the Franklin County Court of Common Pleas on December 20, 2005, alleging negligence by Valvoline and various John Doe defendants. Valvoline filed an answer to Cooper's complaint on January 25, 2006, and a motion for summary judgment on February 20, 2007, arguing that it had no duty to remove or warn invitees of natural accumulations of ice or snow. Cooper responded to Valvoline's motion for summary judgment on March 6, 2007, with a memorandum contra and a motion to strike Valvoline's motion as untimely. In her memorandum contra, Cooper argued that Valvoline acted negligently by failing to salt the sidewalk after shoveling the snow. On March 11, 2007, Valvoline filed a memorandum contra *Page 3 
Cooper's motion to strike and a reply memorandum in support of its motion for summary judgment.
 {¶ 4} On April 11, 2007, the trial court denied Cooper's motion to strike and granted Valvoline's motion for summary judgment. In denying Cooper's motion to strike, the trial court noted that Cooper's reluctance to cooperate with Valvoline's discovery requests delayed the discovery process, forcing the trial court to issue an order compelling discovery. The court also noted that counsel for both parties attended a status conference in November 2006, when the court stated that the parties could file dispositive motions after the completion of Cooper's deposition, which occurred after the dispositive motions deadline. In granting Valvoline's motion for summary judgment, the trial court determined that Cooper failed to present evidence sufficient to invoke either exception to the general rule that an owner or occupier of property is not liable for injury suffered as a result of a slip and fall on a natural accumulation of ice and snow.
 {¶ 5} On May 10, 2007, Cooper filed a timely notice of appeal, asserting five assignments of error:
 ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT ABUSED ITS DISCRETION BY NOT STRIKING DEFENDANT VALVOLINE'S UNTIMELY FILING OF ITS MOTION FOR SUMMARY JUDGMENT WHEN THE COURT NEVER STATED, GRANTED, OR JOURNALIZED AN EXTENSION OF THE DISPOSITIVE MOTIONS DEADLINE CONTAINED IN THE COURT'S CASE SCHEDULING ORDER.
 ASSIGNMENT OF ERROR NO. II
 THE TRIAL COURT ERRED BY FAILING TO CONSIDER ALL EVIDENCE AND TESTIMONY OFFERED IN OPPOSITION TO DEFENDANT VALVOLINE'S MOTION FOR SUMMARY JUDGMENT BY FAILING TO CONSIDER *Page 4 
THAT AN OWNER/OCCUPIER CAN BE HELD LIABLE FOR ACCIDENTS WHICH OCCUR AS A RESULT OF ICE/SNOW ACCUMULATIONS ON HIS PROPERTY WHEN THE OWNER/OCCUPIER IS SHOWN TO HAVE ACTUAL OR IMPLIED NOTICE THAT THE NATURAL ACCUMULATION OF ICE/SNOW ON HIS PROPERTY CREATED A CONDITION SUBSTANTIALLY MORE DANGEROUS TO HIS BUSINESS INVITEES THAN SHOULD BE ANTICIPATED.
 ASSIGNMENT OF ERROR NO. III
 THE TRIAL COURT ERRED BY FAILING TO CONSIDER ALL EVIDENCE AND TESTIMONY OFFERED IN OPPOSITION TO DEFENDANT VALVOLINE'S MOTION FOR SUMMARY JUDGMENT BY FAILING TO CONSIDER THAT AN OWNER/OCCUPIER CAN BE HELD LIABLE FOR ACCIDENTS WHICH OCCUR AS A RESULT OF ICE/SNOW ACCUMULATIONS ON HIS PROPERTY WHEN THE OWNER/OCCUPIER IS ACTIVELY NEGLIGENT IN PERMITTING AND/OR CREATING A DANGEROUS OR UNNATURAL ACCUMULATION OF ICE/SNOW.
 ASSIGNMENT OF ERROR NO. IV
 THE TRIAL COURT ERRED BY FAILING TO CONSIDER ALL EVIDENCE AND TESTIMONY OFFERED IN OPPOSITION TO DEFENDANT VALVOLINE'S MOTION FOR SUMMARY JUDGMENT BY FAILING TO CONSIDER THAT AN OWNER/OCCUPIER HAS A DUTY TO REMOVE NATURAL ACCUMULATIONS OF ICE/SNOW WHICH CREATE A DANGER THAT IS NOT OBVIOUS WHICH AN INVITEE CANNOT REASONABLY BE EXPECTED TO KNOW, AND OF WHICH THE OWNER/OCCUPIER HAS KNOWLEDGE.
 ASSIGNMENT OF ERROR NO. V
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE VALVOLINE'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT THE EVIDENCE AND INFERENCES TO BE DRAWN THEREFROM CREATED AN ISSUE OF MATERIAL FACT FOR THE JURY TO DECIDE.
(Emphasis sic.) *Page 5 
 {¶ 6} In her first assignment of error, Cooper contends that the trial court abused its discretion in denying her motion to strike Valvoline's motion for summary judgment. In support, Cooper argues that Valvoline did not request leave from the trial court to file its motion, as required by Civ.R. 56 when a case has been set for trial. Cooper also argues that the trial court did not journalize any extension of the dispositive motions deadline. Therefore, Cooper contends that the trial court's consideration of Valvoline's motion for summary judgment constituted an abuse of discretion.
 {¶ 7} The trial court's original case scheduling order established the deadline for filing dispositive motions as September 26, 2006. An amended case schedule, filed October 2, 2006, established November 14, 2006, as the new dispositive motions deadline and discovery cut-off date, while maintaining the originally scheduled trial date of January 18, 2007. The trial court conducted a status conference on November 9, 2006, five days before the amended discovery cut-off and dispositive motions deadline. Valvoline contends, and Cooper does not dispute, that at the status conference the trial court orally granted Valvoline leave to file a motion for summary judgment within a reasonable time after the completion of discovery, including Cooper's deposition. On December 7, 2006, Valvoline deposed Cooper. On December 13, 2006, the parties filed an agreed motion to modify the trial date in light of ongoing discovery, and, on January 7, 2007, the trial court continued the trial date to April 30, 2007. Valvoline filed its motion for summary judgment on February 20, 2007.
 {¶ 8} Civ.R. 56(A) and (B) provide that, if an action has been set for pretrial or trial, parties may move for summary judgment only with leave of court. However, it is within the trial court's discretion to grant leave to file a motion for summary judgment *Page 6 
even when the action has been set for trial. Defray v. Mt. CarmelHealth (Apr. 17, 1997), Franklin App. No. 96APE08-1010. Loc.R. 53.01 of the Court of Common Pleas of Franklin County, General Division, grants parties in all civil cases leave to file motions for summary judgment before the dispositive motions deadline, regardless of whether the case is set for pretrial or trial.[2] Loc.R. 57.04, which prohibits motions for summary judgment filed after the dispositive motions deadline without prior leave of court, recognizes that the trial court also retains discretion to permit motions for summary judgment after the dispositive motions deadline. See, also, Juergens v. Strang, Klubnik andAssoc, Inc. (1994), 96 Ohio App.3d 223, 234 (holding that a "court has the discretion of allowing motions after the time allowed for their filing"). Absent an abuse of discretion, an appellate court will not reverse a lower court's decision to accept a motion for summary judgment, even if the motion is untimely. State ex rel. Avalon PrecisionCasting Co. v. Indus. Comm., 109 Ohio St.3d 237, 2006-Ohio-2287, at ¶ 7. The phrase "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 9} In its decision and entry denying Cooper's motion to strike, the trial court stated that, at the November 2006 status conference, it made clear that "dispositive motions could be filed after the deposition of [Cooper] was complete, which according to Valvoline (and not disputed by Cooper) did not occur until after the dispositive motion deadline." Thus, Valvoline argues that the trial court granted it prior leave to file a *Page 7 
dispositive motion after the dispositive motions deadline. Cooper does not dispute that the trial court granted leave for the parties to file dispositive motions after the completion of Cooper's deposition. Rather, Cooper argues that such leave was ineffective because the trial court did not journalize its grant of additional time to file dispositive motions. We reject Cooper's argument that the absence of a journal entry extending the dispositive motions deadline or expressly granting Valvoline leave to file a motion for summary judgment renders the trial court's denial of Cooper's motion to strike an abuse of discretion.
 {¶ 10} Cooper does not allege, let alone establish, that she suffered prejudice as a result of the trial court's consideration of Valvoline's motion for summary judgment. As the Eighth District Court of Appeals has stated: "An appellate court cannot interfere with the trial court's decision [to consider an untimely motion for summary judgment filed without express, prior leave] unless there is a clear showing that the allowance of such motion was prejudicial to appellant's case."Juergens at 234. Here, Valvoline filed its motion for summary judgment two months prior to the scheduled trial date. Cooper had ample time to respond to Valvoline's arguments in support of its motion for summary judgment and availed herself of that opportunity. The record is devoid of any indication that the trial court's allowance of Valvoline's motion for summary judgment prejudiced Cooper's case.
 {¶ 11} In Prohazka v. Ohio State Univ. Bd. of Trustees, Franklin App. No. 03AP-616, 2004-Ohio-1601, this court rejected an argument similar to Cooper's here, where the plaintiff failed to establish prejudice from the trial court's consideration of a motion for summary judgment filed after the dispositive motions deadline. In Prohazka, the *Page 8 
plaintiff acknowledged that the trial court extended the dispositive motions deadline at a status conference, although the trial court did not journalize the extension. That fact, coupled with the plaintiff's failure to establish that he was prejudiced by the trial court's action led us to find no abuse of discretion and to affirm. Like the plaintiff in Prohazka, Cooper does not deny that the trial court orally authorized the filing of dispositive motions after the completion of Cooper's deposition, despite the fact that both the discovery cut-off and dispositive motions deadline elapsed prior to the completion of Cooper's deposition. Also like the plaintiff in Prohazka, Cooper has not demonstrated that she suffered prejudice as a result of the trial court's allowance of Valvoline's motion for summary judgment. Accordingly, we cannot say that the trial court abused its discretion in denying Cooper's motion to strike, and we overrule Cooper's first assignment of error.
 {¶ 12} Cooper's remaining assignments of error concern the appropriateness of the trial court's entry of summary judgment in favor of Valvoline. Therefore, we address those assignments of error together.
 {¶ 13} Appellate review of summary judgment is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Thus, we apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 14} Pursuant to Civ.R. 56(C), a court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, *Page 9 
transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95.
 {¶ 15} To establish a cause of action for negligence, a plaintiff must show the existence of a duty, breach of that duty, and an injury proximately caused by the breach. Texler v. D.O. Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677, 680, 1998-Ohio-602. To defeat a properly supported motion for summary judgment in a negligence action, the plaintiff must first demonstrate a duty owed him by the defendant.Bartholic v. Am. Elec. Power Serv. Corp. (June 29, 1993), Franklin App. No. 93AP-245; Stanger v. Waterford Tower Co. (Aug. 25, 1994), Franklin App. No. 94APE03-371. The plaintiff must then present evidence from which reasonable minds could conclude that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries. Stanger, citing Porter v. Miller (1983), 13 Ohio App.3d 93.
 {¶ 16} An owner or occupier of premises owes business invitees, such as Cooper in this case, a duty of ordinary care in maintaining the premises so that invitees are not *Page 10 
unnecessarily and unreasonably exposed to danger. Paschal v. Rite AidPharmacy, Inc. (1985), 18 Ohio St.3d 203. However, the Supreme Court of Ohio has consistently held that an owner or occupier's duty of ordinary care does not extend to natural accumulations of ice and snow. Debie v.Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38; Sidle v.Humphrey (1968), 13 Ohio St.2d 45; Brinkman v. Ross, 68 Ohio St.3d 82,1993-Ohio-72. "[I]t is well established that an owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow." Brinkman at 83. As the Supreme Court explained in Brinkman, at 84, "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow."
 {¶ 17} Ohio courts have recognized two exceptions to the general rule that an owner or occupier of premises owes no duty to business invitees regarding accumulations of ice and snow, both of which Cooper contends are applicable here. First, a plaintiff may establish negligence where an owner or occupier had actual or implied notice that a natural accumulation of ice or snow on his property created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of the conditions generally prevailing in the area. Kaeppner v. Leading Mgt., Inc., Franklin App. No. 05AP-1324, 2006-Ohio-3588, at ¶ 11, citing Debie. Second, the no-duty rule is inapplicable where an owner or occupier is actively negligent in permitting or creating an unnatural accumulation of ice or snow. Kaeppner *Page 11 
at ¶ 11, citing Lopatkovich v. Tiffin (1986), 28 Ohio St.3d 204, 207. To survive a properly supported motion for summary judgment in this type of case, the plaintiff must produce evidence to establish either that: (1) the natural accumulation of ice and snow was substantially more dangerous than the plaintiff could have anticipated and that the landowner had notice of such danger; or (2) that the landowner was actively negligent in permitting an unnatural accumulation of ice and snow to exist. Sasse v. Mahle (Nov. 19, 1999), Lake App. No. 98-L-157; see Martin v. Hook SuperX, Inc. (Mar. 18, 1993), Franklin App. No. 92AP-1649.
 {¶ 18} With respect to the second exception, Cooper argues that a jury question exists as to whether the accumulation of ice upon which she fell was natural or unnatural, thus rendering summary judgment inappropriate. We disagree because a reasonable trier of fact, viewing the evidence in the light most favorable to Cooper, could not conclude that the accumulation of ice upon which Cooper fell was unnatural. "[A] natural accumulation of ice and snow is one which accumulates as a result of an act of nature, whereas an unnatural accumulation is one that results from an act of a person." Coletta v. Univ. of Akron (1988),49 Ohio App.3d 35, 37. "`Unnatural' accumulation must refer to causes and factors other than * * * the inclement weather conditions of low temperature, strong winds and drifting snow, i.e., * * * to causes other than the meteorological forces of nature." Bartholic, quoting Porterat 95.
 {¶ 19} Although Cooper testified that there was nothing unusual about the formation of the ice, she argues that Valvoline created an unnatural accumulation of ice by shoveling snow from the sidewalk and failing to salt the underlying ice. This court has previously rejected similar arguments. In Coletta at 37, we stated that, "[w]hen the *Page 12 
top portion of a natural accumulation of snow and ice is removed, the accumulation of ice and snow remaining is still a natural accumulation." In that case, the plaintiff fell while crossing a loose gravel parking lot that, although recently plowed, was covered with ice and snow. The plaintiff argued that the defendant exposed ice-covered stones when it plowed the parking lot, creating an unnatural accumulation of ice. Despite the defendant's recent plowing of the parking lot, we held that reasonable minds could only conclude that the plaintiff's injuries resulted from a natural accumulation of ice and snow, with respect to which the landowner owed invitees no duty. Similarly, in Cunningham v.Thacker Serv., Inc., Franklin App. No. 03AP-455, 2003-Ohio-6065, at ¶ 14, we stated that "[s]alting or shoveling does not turn a natural accumulation into an unnatural accumulation." See, also, Community Ins.Co. v. McDonald's Restaurants of Ohio, Inc. (Dec. 11, 1998), Montgomery App. No. 17051.
 {¶ 20} Cases where courts have found genuine issues of material fact regarding whether an accumulation of ice and snow was natural or unnatural generally involve records containing evidence of an unnatural cause or source of the accumulation. See Tyrrell v. Invest. Assoc,Inc. (1984), 16 Ohio App.3d 47 (defect in canopy extending over sidewalk); Sherwood v. Mentor Corners Ltd. Partnership, Lake App. No. 2006-L-020, 2006-Ohio-6865 (valley between gable and edge of roof);Nawal v. Clearview Inn, Inc. (Aug. 4, 1994), Cuyahoga App. No. 65796 (improperly maintained downspouts and gutters). Courts have also denied summary judgment where there is evidence that an accumulation of ice results from some source other than precipitation or meteorological conditions. See Notman v. AM/PM, Inc., Trumbull App. No. 2002-T-0144,2004-Ohio-344 (ice resulted from water from carwash hoses). *Page 13 
 {¶ 21} Here, there is no evidence of any defect on the Valvoline premises causing the accumulation or of any unnatural source of the accumulated ice. In her deposition, Cooper could recall no unevenness, cracks or anything unusual about the sidewalk. Nor did Cooper notice anything unusual about the accumulation of ice, stating: "It just looked like they had just cleared the snow off * * * the pavement." (Cooper Depo. at 41.) The ice upon which Cooper fell was, simply, the underlying layer of ice left on the sidewalk after Valvoline shoveled the top layer of snow. Because we have previously held that the removal of a layer of snow or ice does not render a naturally accumulated lower layer unnatural, we conclude that the trial court properly found that Cooper fell as a result of a natural accumulation of ice, with respect to which Valvoline owed Cooper no duty.
 {¶ 22} Under the first exception to the general rule that an owner or occupier's duty of ordinary care does not extend to natural accumulations of ice and snow, Cooper argues that Valvoline had actual or implied notice that the ice created a condition substantially more dangerous than a business invitee should have anticipated from the conditions generally prevailing in the area. We reject Cooper's argument, finding no issue of fact as to whether the shoveled, unsalted sidewalk created a condition substantially more dangerous than Cooper should have anticipated from the prevailing weather conditions or as to whether Valvoline had superior knowledge of such a substantially more dangerous condition.
 {¶ 23} Relying upon Mikula v. Slavin Tailors (1970), 24 Ohio St.2d 48, Cooper contends that, by changing or diverting a natural accumulation of ice or snow, an owner or occupier may create a hidden danger, which an invitee is unlikely to appreciate. In *Page 14 Mikula, the Ohio Supreme Court found that "a natural accumulation of snow which fills or covers [a deep] hole [in a parking lot] is a condition substantially more dangerous than that normally associated with snow." Id. at 57. Moreover, the court stated that an invitee is not bound to anticipate a covered hole as an ordinary hazard resulting from the snow. Id. The Supreme Court held that "[w]here an owner in control of a business parking area has notice, actual or constructive, that a natural accumulation of snow thereon has, by reason of covering a hole in the surface thereof, created a condition substantially more dangerous to a business invitee than that normally associated with snow, such owner's failure to correct the condition constitutes actionable negligence." Id. at paragraph five of the syllabus. Courts have applied the rule of Mikula to create an exception to a landowner's lack of duty when accumulated snow or ice conceals what may have otherwise been an open and obvious danger. See Koss v. Cleveland Holding Corp. (July 10, 1975), Cuyahoga App. No. 34111 (directed verdict in favor of landowner was error where snow covered an eight-inch raised bumper, creating a condition substantially more dangerous than that normally associated with snow).
 {¶ 24} Here, there is no evidence supporting application of theMikula rule. While Cooper argues that this court should view the ice uncovered when Valvoline shoveled the sidewalk as a hidden danger, we decline to do so. There is no evidence that the ice upon which Cooper fell concealed a dangerous condition nor is there evidence that the ice created a condition substantially more dangerous than that normally associated with ice and snow. Unlike in Mikula, the accumulation of ice and snow did not conceal a defect or hazard that an invitee would not anticipate from her knowledge of conditions prevailing in the area. Rather, the hazard here was simply the slippery nature of the ice *Page 15 
on the sidewalk. Cooper testified that the weather was "snowy and icy" and that snow "was melting and new snow was coming." (Cooper Depo. at 16.) Moreover, Cooper, a lifelong Ohio resident, was aware of the risks of ice and snow generally, acknowledging that accumulations of snow and ice make surfaces slippery and dangerous. Thus, we find that the record lacks evidence that the natural accumulation of ice upon which Cooper fell was substantially more dangerous than an invitee should reasonably have anticipated from her knowledge of the inclement winter weather.
 {¶ 25} Cooper also relies heavily on the Valvoline manager's statement that he told another employee to get salt for the icy sidewalk as evidence of Valvoline's knowledge of the dangerous condition posed thereby. However, even though the record contains evidence that Valvoline was aware of the icy sidewalk, the Valvoline manager's statement does not demonstrate that Valvoline's knowledge was superior to Cooper's own knowledge. "To the extent that a business invitee and the owner of the premises have equal knowledge of the usual dangers resulting solely from natural accumulations of ice and snow, the latter cannot be charged with actionable negligence with regard to such dangers." Mikula at 56. In Coleman v. Akron Bd. of Edn., Summit App. No. 21598, 2003-Ohio-7171, the Ninth District Court of Appeals rejected an argument that the defendant school board possessed knowledge of an icy parking lot superior to the knowledge of the plaintiff where both parties were aware of ice in the parking lot. The court noted: "Most people anticipate falling on ice if they are not careful and that is exactly what [the plaintiff] did. As [the defendant] did not have `superior knowledge' of any dangers posed by the ice, [the defendant] did not owe [the plaintiff] any duty." Id. at ¶ 19; see, also,Billet v. B.P. Oil Co., Inc. (Sept. 4, 1998), Mahoning *Page 16 
App. No. 97 CA 177 (rejecting appellant's argument that appellee's employees had superior knowledge of ice on appellee's parking lot and concluding, instead, that the parties had equal knowledge of the inclement weather conditions and resulting ice).
 {¶ 26} Cooper had both actual and constructive knowledge of the dangers presented by natural accumulations of ice and snow. InBrinkman, at 84, the Supreme Court agreed with a statement in the court of appeals' dissenting opinion, as follows:
 * * * "The issue is not which party has the better appreciation of the snowy or icy condition of the sidewalk which was caused by the natural accumulation of snow and ice. As a matter of law, the guest is charged with sufficient knowledge of the hazards to be required to protect herself against falls."
Further, as the Second District Court of Appeals has stated:
 * * * [I]t is assumed that reasonable individuals will understand that winter conditions can create dangers from ice and snow, and individuals will take the necessary precautions. It is not that patches of ice and snow are obvious. Many are not. It is that, as a general matter, the potential for dangerous conditions in winter is obvious. Dangers from natural accumulations of ice and snow are, therefore, generically treated by the law as open and obvious. * * *
Community Ins. Co., supra. Thus, even though Valvoline knew of the hazardous condition created by the natural accumulation of ice and snow on its sidewalks, so, too, as a matter of law, did Cooper. See id. Upon review, we find no evidence from which a reasonable trier of fact could conclude that Valvoline's knowledge of the dangers created by the icy sidewalk were superior to the knowledge with which Cooper was charged, as a matter of law. Rather, the evidence demonstrates that the parties had equal knowledge of the dangers resulting from the natural accumulation of ice and snow. *Page 17 
 {¶ 27} For these reasons, we find that the trial court correctly concluded that Cooper failed to offer evidence supporting application of either exception to the general rule that an owner or occupier of property owes no duty to business invitees with respect to natural accumulations of ice and snow. As the trial court noted, Cooper was aware of the snowy and icy conditions prevailing generally in the area and appreciated the dangers of snow and ice. Likewise, the record lacks evidence that the shoveled, unsalted sidewalk was substantially more dangerous than conditions Cooper could reasonably anticipate, given the prevailing winter weather conditions. Accordingly, Valvoline owed no duty to Cooper with respect to the natural accumulation of ice upon which Cooper slipped and fell, and the trial court appropriately granted Valvoline's motion for summary judgment. Therefore, we overrule Cooper's second, third, fourth, and fifth assignments of error.
 {¶ 28} Having overruled each of Cooper's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BROWN and KLATT, JJ., concur.
[1] Also identified in the record as "Ashland, Inc. dba Valvoline Instant Oil Change."
[2] Although Loc.R. 53.01 literally applies only to Civ.R. 56(A), which provides for motions for summary judgment by a plaintiff, this court has recognized that Loc.R. 53.01 implicitly grants leave with respect to all motions for summary judgment. Streets v. Chesrown Ent.,Inc., Franklin App. No. 03AP-577, 2004-Ohio-554, citing Franklin v.Columbus (1998), 130 Ohio App.3d 53, 57. *Page 1