CANAL INSURANCE, Plaintiff-Appellee, v. A AND R TRANSPORTATION AND WAREHOUSE, LLC, Defendant (Kenneth Boyd, Defendant-Appellant).

First District (3rd Division)   No. 1—04—0881

Opinion filed April 6, 2005.

Michael R. Panter & Associates, of Chicago (Michael R. Panter, of counsel), for appellant.

Leahy, Eisenberg & Fraenkel, Ltd., of Chicago (Timothy W. Kelly, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Canal Insurance (Canal), filed the instant action seeking a judicial declaration that it is not obligated to defend its insured, A&R Transportation and Warehouse, LLC (A&R), in a tort action brought against A&R by Kenneth Boyd or to indemnify A&R from any judgment that might be entered against it in that action. Canal and Boyd filed cross-motions for summary judgment. The trial court granted summary judgment in favor of Canal and denied Boyd's motion. Boyd filed a timely notice of appeal. A&R has not appealed from the trial court's ruling and is not a party to this appeal. For the reasons that follow, we affirm the judgment of the circuit court.

The facts of this case are not in dispute. Canal issued a policy of liability insurance (hereinafter referred to as the "Policy"), pursuant to which it agreed, under specified circumstances, to pay all sums within the limits of the Policy that A&R might become legally obligated to pay as damages for bodily injury or property damage and to defend A&R in any action seeking such damages. The Policy covered the

period from December 26, 1998, to December 26, 1999, and provides, in part, as follows:

> "1. **COVERAGE A—BODILY INJURY** \*\*\*
>
> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
>
> **bodily injury** or **property damage**
>
> to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage** \*\*\*."

The Policy defines "automobile" as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto)." An "owned automobile" is defined in the Policy as "an **automobile** which is owned by the **named insured** and described in the declarations."

In the space provided on the declarations page of the Policy for a description of "Owned Automobiles" is typed the phrase: "SEE ENDORSEMENT E69L ATTACHED." That endorsement lists a number of tractors, identified by year, make, and vehicle identification number. There are no individual trailers listed or described in the endorsement. However, in the space provided on the endorsement form for the description of scheduled vehicles, it states: "ANY TRAILER WHILE SINGULARLY ATTACHED TO A SCHEDULED TRACTOR."

Also attached to the Policy is Endorsement Form MCS-90, entitled "Endorsement For Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980," which provides, in part, as follows:

> "**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.
>
> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).
>
> In consideration of the premium stated in the Policy to which this endorsement is attached, *the insurer (the company) agrees to pay, within the limits of liability described herein, any final judg-*

*ment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles* subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy* and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded for public liability does not apply to injury or death of the insured's employees while engaged in the course of their employment, or property transported by the insured designated as cargo.

It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." (Emphasis added.)

On October 5, 2000, Boyd filed an action in the circuit court of Cook County against Vickie O'Neal, A&R Transportation Trucking, Inc., and A&R Transport, seeking damages for injuries he is alleged to have received on April 21, 1999, when he lost control of a vehicle he was operating (hereinafter referred to as the "underlying action"). In his complaint in the underlying action, Boyd alleged that, prior to April 21, 1999, he contracted to haul refrigerated freight owned by "A&R Transportation Trucking, Inc., and/or A&R Transport" using a trailer provided by them. He also alleged that he rented a 1994 Volvo tractor from O'Neal. According to Boyd's complaint, while he was operating the tractor he rented from O'Neal and pulling the trailer he had contracted to haul, "the brakes on the tractor and/or trailer failed as *** [he] applied them while descending a hill, causing him to lose control of the tractor/trailer."

A&R, presumptively sued incorrectly in the underlying action as "A&R Transportation Trucking, Inc., and/or A&R Transport," tendered the defense of Boyd's underlying action to Canal. Canal, acting under a reservation of rights, undertook A&R's defense and,

thereafter, filed the instant action against Boyd and A&R, seeking a declaration that it owed no duty under the Policy to defend A&R in the underlying action or to indemnify it with respect thereto.

In its complaint in the instant action, Canal asserts that, because neither the tractor that Boyd was driving nor the trailer he was pulling is described in the Policy's declarations or scheduled in Endorsement E69L attached to the Policy, no coverage is afforded to A&R under the Policy for the occurrence alleged in Boyd's underlying action.

Both Boyd and A&R were served with a summons and a copy of the complaint in the instant action. A&R failed to appear or plead to Canal's complaint, and an order of default was entered against it. For his part, Boyd appeared and answered the complaint, affirmatively asserting that, by reason of the provisions of Endorsement Form MCS-90, Canal is required to pay any judgment that might be rendered against A&R in the underlying action, regardless of whether the tractor that he was driving or the trailer that he was pulling was specifically described in the Policy.

Boyd and Canal filed cross-motions for summary judgment. The trial court denied Boyd's motion and granted Canal's cross-motion, finding that Canal owed no duty under the Policy to defend A&R in the underlying action or to indemnify it with respect thereto. Boyd's motion for reconsideration was denied, and this timely appeal followed.

Boyd urges us to reverse both the summary judgment granted in favor of Canal and the denial of his motion for summary judgment. Our resolution of this appeal turns on the question of whether, as a matter of law, the terms of the Policy either do or do not obligate Canal to defend A&R in the underlying action or to indemnify A&R from any damages that might be assessed against it therein. The issue is one of contract construction.

■ "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993). Our review of a trial court's order granting summary judgment is *de novo*. *Sears Roebuck & Co. v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171, 793 N.E.2d 736 (2003).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380, 313 N.E.2d 457 (1974). When,

as in this case, the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law. *Allen v. Meyer*, 14 Ill. 2d 284, 292, 152 N.E.2d 576 (1958).

■ In *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992), our supreme court held:

"In construing an insurance policy, the court must ascertain the intent of the parties to the contract. [Citations.] To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citation]. If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.* [Citations.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy [citations]." (Emphasis in original.) *Outboard Marine Corp.*, 154 Ill. 2d at 108-09.

Canal argues, as it did in the trial court, that the Policy affords no coverage for the claims asserted against A&R in the underlying action as neither the tractor that Boyd was driving nor the trailer that he was pulling falls within the Policy's definition of an "owned automobile." Although Boyd admits that neither vehicle is listed or described in either the declarations page of the Policy or Endorsement E69L attached thereto, he asserts that the provisions of Endorsement Form MCS-90 negate the limiting definition of an "owned automobile" contained within the body of the Policy and obligate Canal to indemnify A&R for any damages that might be awarded against it in the underlying action. As noted earlier, Endorsement Form MCS-90 obligates Canal to pay, within the limits of liability described in the Policy, any final judgment recovered against A&R for public liability resulting from negligence in the operation, maintenance, or use of motor vehicles subject to the financial responsibility requirements of "Sections 29 and 30 of the Motor Carrier Act of 1980," regardless of whether or not each motor vehicle is specifically described in the Policy. Canal acknowledges the provisions of Endorsement Form MCS-90 relied upon by Boyd, but argues that the endorsement affords no coverage for the occurrence which is the subject of the underlying action.

As Canal correctly notes, Endorsement Form MCS-90 provides that the coverage afforded thereunder does not apply to injuries sustained by an employee of A&R while acting in the course of his employment. Canal argues that, for purposes of the application of the

provisions of the Endorsement Form MCS-90, Boyd was an employee of A&R and, as a consequence, the endorsement affords A&R no coverage for the occurrence alleged in the underlying action. We agree with Canal in this regard.

Under the authority of the Motor Carrier Safety Act of 1980 (49 U.S.C. § 13906 (2000)), the Secretary of Transportation promulgated regulations requiring that an MCS-90 Endorsement be attached to any liability policy issued to a certified interstate carrier (49 C.F.R. § 387.1 (2004)). *Perry v. Harco National Insurance Co.*, 129 F.3d 1072, 1074 (9th Cir. 1997). By its very terms, the purpose of the MCS-90 Endorsement is "to assure compliance by the insured \*\*\*, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC)." Because Form MCS-90 is a federally mandated endorsement whose terms are specified by federal regulation, federal law governs its operation and effect. *John Deere Insurance Co. v. Nueva*, 229 F.3d 853, 856 (9th Cir. 2000).

The MCS-90 Endorsement excludes from coverage "the insured's employees while engaged in the course of their employment." In *Perry v. Harco National Insurance Co.*, 129 F.3d 1072 (9th Cir. 1997), the court addressed the meaning of the term "employee" as used in an MCS-90 Endorsement. The *Perry* court noted that the term is defined in 49 C.F.R. § 390.5 as "a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)" (49 C.F.R. § 390.5 (2004)) and concluded that it is that definition of an "employee" that is to be applied when interpreting an MCS-90 Endorsement. *Perry*, 129 F.3d at 1074-75; see also *Consumers County Mutual Insurance Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002). Boyd argues, however, that adopting this definition of the term "employee" when interpreting the coverage afforded by an MCS-90 Endorsement would be "in direct conflict with the express purpose of the statute [Motor Carrier Act of 1980] and the express language of the statute's liability insurance requirements." This very argument, however, was rejected by the court in *Consumers County Mutual Insurance Co.*, 307 F.3d at 366, which held:

> "The purpose of this insurance requirement is to ensure that a financially responsible party will be available to compensate members of the public injured in a collision with a commercial motor vehicle. Although the Motor Carrier Safety Act places an affirmative insurance obligation on motor carriers with respect to the public, it does not require motor carriers to obtain coverage for

'injury or death of [their] employees while engaged in the course of their employment.' 49 C.F.R. § 387.15."

■ At the time of the occurrence alleged in his complaint in the underlying action, Boyd was hauling a load of refrigerated freight in furtherance of a contract he had entered into with A&R. He was driving a tractor which he had leased from O'Neal and was pulling a trailer which was the property of A&R. Boyd asserts that he was acting as an independent contractor. However, the definition of an employee as set forth in 49 C.F.R. § 390.5 includes independent contractors. Because Boyd was a statutory employee of A&R at the time of the occurrence alleged in the underlying action, the coverage afforded to A&R by reason of the MCS-90 Endorsement attached to the Policy "does not apply."

Boyd also contends that a finding that he was an employee of A&R in the context of this declaratory judgment action is inappropriate as it will be binding upon him in the underlying action. See *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387, 739 N.E.2d 445 (2000); *Murphy v. Urso*, 88 Ill. 2d 444, 455-57, 430 N.E.2d 1079 (1981). Canal argues, and we agree, that a finding in this regard is applicable only to a determination of coverage under the MCS-90 Endorsement and for no other purpose. See *Perry*, 129 F.3d at 1075.

Finally, Boyd argues that "Illinois public policy requires that Canal insure A&R" for the occurrence alleged in the underlying action. He asserts that "[t]he Illinois Commercial Transportation Law requires that all motor carriers maintain insurance coverage and that 'all motor vehicles operated by or under authority of the carrier will be covered, whether or not such vehicles have been reported to the insurance, surety, or other company.' "

Section 18c—4901 of the Illinois Commercial Transportation Law (Transportation Act) (625 ILCS 5/18c—4901 (West 2002)) provides that "[n]o motor carrier of property shall operate within this State unless it has on file with the [Illinois Commerce] Commission or its agent proof of continuous insurance or surety coverage in accordance with Commission regulations." Section 18c—4903 states that "[e]ach certificate or other proof of insurance or surety coverage shall have, as an implied term, that *** all motor vehicles operated by or under authority of the carrier will be covered, whether or not such vehicles have been reported to the insurance, surety, or other company." 625 ILCS 5/18c—4903 (West 2002). However, these provisions of the Transportation Act upon which Boyd relies are inapplicable to the facts of this case.

Section 18c—1201 of the Transportation Act specifically states that the jurisdiction of the Illinois Commerce Commission "shall

extend to for-hire transportation by motor carrier \*\*\* within the State of Illinois, and except as otherwise provided elsewhere in this Chapter *shall extend only to intrastate commerce.*" (Emphasis added.) 625 ILCS 5/18c—1201 (West 2002). It is undisputed that, at the time of the occurrence alleged in the underlying action, Boyd was hauling a load of refrigerated freight for A&R from Illinois to Pennsylvania. As a consequence, Boyd was engaged in "interstate commerce" (see 625 ILCS 5/18c—1104(16) (West 2002)), and the provisions of the Transportation Act upon which he relies are inapplicable to the occurrence alleged in the underlying action. As such, they do not give rise to any obligation on the part of Canal to provide coverage under the Policy for any vehicle which is not described in the declarations or listed in Endorsement E69L.

Based upon the foregoing analysis, we find that the occurrence alleged in the underlying action does not fall within the coverage afforded to A&R under the Policy because: (1) the vehicles which Boyd was operating do not fall within the Policy definition of an "owned automobile"; and (2) the MCS-90 Endorsement does not apply to Boyd's injury as he was a statutory employee of A&R at the time of the occurrence. We, therefore, affirm the circuit court's order denying Boyd's motion for summary judgment and granting summary judgment in favor of Canal.

Affirmed.

KARNEZIS, P.J., and SOUTH, J., concur.