OPINION
{¶ 1} Plaintiff-appellant, Farah Basha ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas denying his motions for summary judgment and granting summary judgment in favor of appellee Canal Insurance Company ("Canal").
 {¶ 2} This matter arises out of a motor vehicle accident that occurred on June 15, 2005. On October 18, 2005, appellant filed a complaint against Abdi Jama Ghalib ("Ghalib") and Daryel Express Trucking, LLC ("Daryel Express"), alleging he was injured as a result of Ghalib's negligence. According to the complaint, appellant was a passenger in a 2000 Freightliner tractor trailer, operating under USDOT No. 1205287, which was assigned to Daryel Express. Appellant alleged in his complaint that Ghalib failed to control the tractor trailer, resulting in an accident that occurred on westbound Interstate 40 in Coconino County, Arizona. Under a reservation of rights, Canal undertook the defense of Ghalib and Daryel Express. On February 16, 2006, Canal filed a complaint for declaratory judgment against appellant, Ghalib, and Daryel Express, seeking a declaration that pursuant to the terms, conditions and exclusions of the insurance policy, Canal was not obligated to defend or indemnify either Daryel Express or Ghalib for the claims arising out of the June 15, 2005 accident.
 {¶ 3} On April 25, 2006, appellant filed a motion, which was granted, to consolidate the two cases. Thereafter, appellant filed a motion for summary judgment *Page 3 
against Canal and a motion for summary judgment against Ghalib. In response, Canal filed a combined memorandum contra and motion for summary judgment against appellant. Additionally, Canal filed motions for default judgment against Daryel Express and Ghalib.
 {¶ 4} On October 22, 2007, the trial court issued a decision: (1) granting in part Canal's motion to strike; (2) granting Canal's motion for reconsideration of the court's decision denying default judgment; (3) denying appellant's motion for telephone deposition; (4) granting Canal's motion for summary judgment; and (5) denying appellant's motions for summary judgment.
 {¶ 5} This appeal followed, and appellant brings six assignments of error for our review:
 ASSIGNMENT OF ERROR NO. 1
 The Trial Court erred in failing to find that defendant driver Ghalib is an "insured" under the Canal insurance contract; Canal has a duty under the MCS 90 to pay damages for the Defendant driver Ghalib's negligence, completely independent of any liability Canal might have to pay damages for the Defendant "named insured" owner Daryel.
 ASSIGNMENT OF ERROR NO. 2
 The trial court erred in failing to find the endorsement (E-4), excluding insurance coverage for bodily injury sustained by any person occupying the vehicle is unenforceable under Federal statute.
 ASSIGNMENT OF ERROR NO. 3
 The trial court erred when it failed to grant Plaintiff's motions for summary judgment.
 ASSIGNMENT OF ERROR NO. 4 *Page 4 
 The Trial Court erred in Granting Default Judgment against both the Defendant Ghalib and the Defendant Daryel in the Declaratory Judgment action.
 ASSIGNMENT OF ERROR NO. 5
 The Court should have allowed telephone depositions, and abused discretion in refusing to allow telephone depositions.
 ASSIGNMENT OF ERROR NO. 6
 The trial court erred when it failed to find a question of fact remains on whether Basha was an employee of Daryel, for purpose of insurance coverage.
 {¶ 6} This matter was decided in the trial court by summary judgment, which under Civ. R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621,629, citing Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ. R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 7} An appellate court's review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Patsy Bard v. Society Nat. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an *Page 5 
independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440, 445. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; CoventryTwp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.[1]
 {¶ 8} At issue in this case is the "Basic Automobile Liability Policy" of insurance ("the Policy") issued by Canal to Daryel Express. In Section A of the Policy, it states, in relevant part:
 I. Coverage A * * *
 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an owned automobile or of a temporary substitute automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
 Exclusions: This insurance does not apply: *Page 6 
 * * *
 (c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law * * *[.]
(Emphasis sic.)
 {¶ 9} The policy also contains several endorsements, two of which are relevant to this appeal. One of the them, the "Occupant Hazard Excluded" endorsement ("Occupant Hazard Endorsement"), provides, in part, "[i]t is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the automobile." The second endorsement pertinent to this matter is the federally-mandated Form MCS-90 ("MCS-90"), which provides in relevant part:
 In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded for public liability does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. *Page 7 
 {¶ 10} Canal argued to the trial court that appellant was an employee of Daryel Express, and, therefore, because of the employee exclusions contained in both the Policy and the MCS-90, appellant was not entitled to any benefits under the Policy. Further, Canal argued that appellant was precluded from coverage pursuant to the Occupant Hazard Endorsement. Though calling Daryel Express his employer in his answer, in his first affidavit, in his deposition, and his motions for summary judgment against Canal and Ghalib, appellant altered his theory and nomenclature, and argued in his memorandum contra that he was not an employee of Daryel Express.[2] Appellant also argued to the trial court that Ghalib qualified as a separate insured under the Policy, and since appellant clearly was not an employee of Ghalib, none of the employee exclusions were applicable, and, thus, appellant was not precluded from coverage.
 {¶ 11} The trial court held that despite his protestations to the contrary, appellant was, in large part due to his own admissions, an employee of Daryel Express, and was therefore, not entitled to benefits under the Policy. It is clear that if the trial court is correct, that appellant is an employee of Daryel Express, judgment must be rendered in favor of Canal, as the policy and the endorsements are clear and unambiguous on their face. If, however, there is a genuine issue of material fact with respect to this issue, then appellant would be correct that this matter was inappropriately decided by summary judgment. *Page 8 
 {¶ 12} In his first assignment of error, appellant contends the trial court failed to find that Ghalib was an insured under the Policy. According to appellant, Ghalib qualifies as an "insured" under the Policy, and the MCS-90 binds Canal to pay for injury resulting from the negligence of an "insured." Because appellant was not an employee of the "insured" Ghalib, appellant contends he is not barred by the employee exclusion contained in the MCS-90.
 {¶ 13} We find this argument untenable. Under the Motor Carrier Act of 1980, certain commercial motor carriers engaged in interstate commerce must register with the United States Secretary of Transportation and comply with minimum financial responsibility requirements established by the Secretary of Transportation. Lynch v. Yob (2002), 95 Ohio St.3d 441,443, citing Sections 13902(a)(1) and 31139, Title 49, U.S. Code. "Courts that consider the applicability of an MCS-90 endorsement, a federally mandated endorsement to motor carrier insurance policies, construe its operation and effect as a matter of federal law." Id. at 445, citingCanal Ins. Co. v. First Gen. Ins. Co. (C.A.5, 1989), 889 F.2d 604, 610, modified on other grounds (C.A.5, 1990), 901 F.2d 45; Ford Motor Co. v.Transport Indemn. Co. (C.A.6, 1986), 795 F.2d 538, 545. See, also,John Deere v. Nueva (C.A.9, 2000), 229 F.3d 853.
 {¶ 14} Pursuant to Section 387.5, Title 49, C.F.R. "insured" is defined as, "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." Further, Section 390.5, Title 49, C.F.R. defines "employee" as:
 Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or *Page 9 
her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.
 {¶ 15} Contrary to appellant's assertions, the status of Ghalib is largely irrelevant as it is appellant's status with which we are concerned. Applying the above-cited definitions, it is apparent that for purposes of the MCS-90, the insured is Daryel Express, and appellant does indeed meet the statutory definition of an employee of Daryel Express. As such, appellant's status as an employee of the insured Daryel Express precludes coverage under the MCS-90. Though appellant contends coverage under the MCS-90 is available to him, he cites no authority in support of his position, i.e., that as an employee or independent contractor who was not driving at the time of the accident he is entitled to benefits under the MCS-90. In fact, our research has revealed that those seeking coverage and benefits under the MCS-90 have indeed been denied such by virtue of the employee exclusion contained in the MCS-90 regardless of whether or not they were a passenger or the driver at the time of the accident. For example, in Consumers Cty. Mut.Ins. Co. v. PW Sons Trucking, Inc. (C.A.5, 2002), 307 F.3d 362, a trucking company hired two drivers, Palliet and Bob, to haul loads to various locations in the United States. On the return trip, Bob was driving and Palliet was asleep in the truck's sleeper bunk. An accident occurred leaving Palliet seriously injured. Bob did not survive the accident. Palliet sought recovery under the policy issued by Consumers, which *Page 10 
resulted in Consumers seeking a declaration that there was no coverage because of the employee exclusion contained in the policy. Palliet argued he was not an employee but, rather, was an independent contractor, and, therefore, the employee exclusion did not apply to him. The Fifth Circuit noted that Section 390.5, Title 49, C.F.R. removed the common law distinction between employees and independent contractors, and, therefore, coverage was precluded under the MCS-90. The court also stated:
 The policy at issue in this case is a public-liability policy designed specifically for use by motor carriers in the interstate trucking industry. Federal law requires motor carriers to procure at least a minimum level of public-liability insurance in order to obtain an operating permit. See Motor Carrier Safety Act of 1984, 49 U.S.C. Section 13906 (2000); 49 C.F.R. Section 387.1 et seq. The purpose of this insurance requirement is to ensure that a financially responsible party will be available to compensate members of the public injured in a collision with a commercial motor vehicle. Although the Motor Carrier Safety Act places an affirmative insurance obligation on motor carriers with respect to the public, it does not require motor carriers to obtain coverage for "injury to or death of [their]employees while engaged in the course of their employment." 49 C.F.R. Section 387.15
Id. at 365-366.
 {¶ 16} The court then considered the insurance policy as a whole and determined that the parties intended Section 390.5, Title 49, C.F.R. to supply the definition of the term "employee" not only to the term as it was used in the MCS-90 Endorsement, but also as the term was used in the policy. Therefore, the court held regardless of his common law status as an independent contractor, the definition of employee contained in Section 390.5, Title 49, C.F.R., which includes independent contractors in its definition, applied to both the MCS-90 and the policy itself, thus rendering coverage unavailable. See, also, *Page 11 Perry v. Harco Natl. Ins. Co. (C.A.9, 1997), 129 F.3d 1072 (for purposes of the MCS-90 endorsement, the plaintiff's husband, who was driving at the time of the accident and was argued to be an independent contractor, was a statutory employee and thus precluded from coverage);Amerisure Mut. Ins. Co. v. Carey Transp., Inc. (Jan. 4, 2007), Michigan Court of Appeals No. 270339, appeal denied by (2007), 479 Mich. 851
(injured plaintiff was barred by the employee exclusion in the insurance policy as well as the MCS-90 even though she was sleeping in the truck's berth at the time of the accident while her fellow-employee/husband was driving); Canal Ins. v. A R Transp. (Apr. 6, 2005),357 Ill. App.3d 305 (since the statutory definition of employee for purposes of the MCS-90 included independent contractors, the plaintiff truck driver was an employee of the insured, and therefore the MCS-90 endorsement afforded no coverage).
 {¶ 17} Because the MCS-90 clearly and unambiguously limits coverage to the insured, Daryel Express, and excludes coverage to employees, which appellant is under the statutory definition, we cannot find that he is entitled to coverage or benefits under the MCS-90. Accordingly, we overrule appellant's first assignment of error.
 {¶ 18} In his second assignment of error, appellant contends the trial court erred in failing to find the Occupant Hazard Endorsement unenforceable under federal law. While appellant is correct to the extent he contends policy exclusions are unenforceable where there is permissible recovery under the MCS-90, he is incorrect that he is not barred by the Occupant Hazard Endorsement in this circumstance.
 {¶ 19} In Powers v. Meyers (1995), 101 Ohio App.3d 504, discretionary appeal not allowed by 73 Ohio St.3d 1413, John Meyers, Sr., was operating a tractor trailer owned *Page 12 
by this employer. In direct violation of his employer's oral and written instructions, Meyers had five members of his family as passengers. An accident occurred, in which Meyers and three family members were killed and two family members were injured. The insurance policy contained an Occupant Hazard Excluded endorsement like that present in the matter before us. The insurer argued because the claimants, Heather, who was killed, and John, who was injured, were both passengers at the time of the accident, the Occupant Hazard Excluded endorsement excluded coverage for injuries or death. The First District Court noted that under the endorsement, the status of Heather and John as passengers precluded coverage, but that under the ICC Endorsement, [3] the status of the tort victims as passengers was not, standing alone, determinative of the issue of whether the policy provides bodily-injury liability coverage for the claims of Heather and John. Thus, the court held "[t]o the extent that an endorsement to a policy of insurance issued to a motor carrier excludes bodily-injury liability coverage based upon the status of the tort victims as passengers in a covered vehicle, it is inconsistent with and thus deleted by the endorsement to the policy which was developed by the Interstate Commerce Commission to assure compliance with Section 1043.1(a), Title 49, C.F.R., and which imposes upon the insurer an obligation to pay any final judgment returned against an insured for bodily *Page 13 
injury resulting from negligence in the operation, maintenance or use of a covered vehicle." Id. at syllabus.
 {¶ 20} However, the important distinction to be made is that the claimants, Heather and John, were not employees, or in any other way associated with the insured trucking company in that case. By its own terms, the MCS-90 "afforded for public liability does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo." Thus, if a member of the general public was injured and Canal sought to exclude coverage under the Occupant Hazard Endorsement, the MCS-90 might very well apply so as to negate the Occupant Hazard Endorsement. However, when it is the person hired by the insured, whether it is as an employee or independent contractor, we did not find, nor did appellant provide, any case in which the MCS-90 operated so as to negate the policy's exclusion. Accordingly, we overrule appellant's second assignment of error.
 {¶ 21} In his third assignment of error, appellant contends the trial court should have granted summary judgment in his favor and against Canal and Ghalib. For the reasons stated in our disposition of appellant's first, second, and remaining assignments of error, we find no error in the trial court's denial of appellant's motion for summary judgment against Canal. Pertaining to Ghalib, appellant asserts, "construing the uncontested evidence most favorably for driver Ghalib, reasonable minds can only conclude he negligently failed to control the vehicle, causing the wreck, and injuring plaintiff Basha." (Appellant's merit brief at 15.) The trial court's decision makes no specific findings regarding Ghalib's negligence, but the trial court did, however, strike *Page 14 
most of the evidence appellant submitted in support of such argument. As stated by Ghalib, appellant presents this court with neither law nor citations to the record to support his argument on appeal.
 {¶ 22} The trial court struck portions of appellant's July 2006 affidavit and portions of the Traffic Crash Report, as either not being based on personal knowledge or being based on inadmissible hearsay. Once stricken, it is clear that as the record stood at the time the motions for summary judgment were pending, appellant had not met his burden under Civ. R. 56 and established there was no genuine issue of material fact with respect to the cause of the accident. Therefore, we cannot say the trial court erred in denying appellant's motion for summary judgment against Ghalib.
 {¶ 23} Accordingly, we overrule appellant's third assignment of error.
 {¶ 24} In his fourth assignment of error, appellant contends despite the fact that valid service was perfected and they failed to answer or otherwise appear, the trial court erred in granting a default judgment against Ghalib and Daryel Express in the declaratory judgment action. According to appellant, because default judgment was sought against the tortfeasor Ghalib, the trial court should have allowed appellant to appear and litigate the issue of insurance coverage. In support, appellant cites to two cases, State Farm Fire Cas. Co. v.Laviena, Mahoning App. No. 04-MA-176, 2005-Ohio-6601, and WesternReserve Cas. v. Glagola, Stark App. No. 2005CA00225, 2006-Ohio-6013, neither of which we find applicable to the matter before us. In each of those cases, a declaratory judgment action was filed by an insurer against the tortfeasor seeking a declaration that the insurer had no duty to defend the tortfeasor. In each case, prior to the injured party *Page 15 
becoming a party and having an opportunity to be heard, default judgments were entered. The injured parties in those cases then sought relief pursuant to Civ. R. 60(B). In an effort to allow the issue regarding the insurer's duty to provide coverage to the tortfeasor to be litigated, both courts held that relief from judgment was appropriate. Here, however, appellant was permitted to litigate the issues raised in the declaratory judgment action. In fact, this is precisely the issue with which we are concerned on appeal, i.e., the insurer's duty to provide coverage for the accident at issue. Accordingly, we find no merit to appellant's argument that a default judgment was not proper with respect to Ghalib and Daryel Express, and, therefore, overrule appellant's fourth assignment of error.
 {¶ 25} In his fifth assignment of error, appellant contends the trial court abused its discretion in refusing to allow a telephone deposition. Appellant states, "if still required on remand," appellant should be permitted to develop his case regarding Ghalib's alleged negligence with a telephone deposition.
 {¶ 26} On January 11, 2007, appellant filed a motion for a deposition by telephone pursuant to Civ. R. 30(B) in order to take the deposition of the investigating officer and eyewitnesses to the incident. Canal filed a memorandum contra arguing that pursuant to the agreed scheduling order filed on September 14, 2006, the discovery cutoff was December 7, 2006. Canal also argued that appellant's request did not comply with Civ. R. 30. The trial court, "based upon the rule, as well as Canal's objection," denied appellant's motion. (October 18, 2007 Decision at 16.)
 {¶ 27} Absent an abuse of discretion, a reviewing court must affirm a trial court's disposition of discovery issues. Bush v. DictaphoneCorp., Franklin App. No. 00AP-1117, *Page 16 
2003-Ohio-883, at ¶ 81, citing State ex rel. The V. Cos. v.Marshall (1998), 81 Ohio St.3d 467, 469. "`An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable decision.'" Id., quoting Marshall.
 {¶ 28} It appears the trial court denied the motion for telephonic deposition, at least in part, due to the discovery deadline established in the parties' scheduling order. It is well-settled that a trial court has the inherent power to control its own docket and the progress of the proceedings in its court. Paramount Parks, Inc. v. Admiral Ins.Co., Warren App. No. CA2007-05-066, 2008-Ohio-1351; Business DataSystems, Inc. v. Gourmet Café Corp., Summit App. No. 23808,2008-Ohio-409; Chou v. Chou, Cuyahoga App. No. 80611, 2002-Ohio-5335;In the Matter of Zmuda (Mar. 31, 1997), Lucas App. No. L-96-073.
 {¶ 29} We do not find, nor does appellant provide, any reason as to why it was an abuse of discretion for the trial court to deny appellant's motion for a telephonic deposition after the discovery deadline set forth in the parties' agreed scheduling order had passed. Accordingly, we overrule appellant's fifth assignment of error.[4]
 {¶ 30} In his sixth assignment of error, appellant contends the trial court erred in failing to find that a question of fact remains as to whether or not appellant was an employee of Daryel Express for purposes of insurance coverage. We disagree.
 {¶ 31} Canal filed a complaint for declaratory judgment seeking a determination that appellant's claims were specifically excluded under the Policy. Appellant filed an *Page 17 
answer and counterclaim in response. In his answer, appellant admits paragraphs 3, 6, and 14 of the complaint. Paragraph 3 states: "Upon information and belief, Defendant Farah Basha is a resident of the State of Ohio and was an employee of Defendant Daryel Express Trucking LLC on the 15th day of June, 2005, and was occupying a motor vehicle owned by Defendant Daryel Express Trucking LLC." (Complaint at 2.) Paragraph 6 states, "[o]n June 15, 2005, Defendant Farah Basha was a passenger in a 2000 Freightliner tractor-trailer, as an employee of Defendant Daryel Express trucking LLC, driven by Defendant Abdi Jama Ghalib." Id. Similarly, paragraph 14 states: "Plaintiff further states that at the time of the alleged accident, defendant Farah Basha was an employee of Defendant Daryel Express Trucking LLC and was in the motor vehicle at the time he sustained the alleged bodily injury." Id. at 3.
 {¶ 32} On July 18, 2006, appellant filed a motion for summary judgment against Canal, which states: "Farah Basha was an employee of Daryel Express Trucking, acting within the course and scope of his employment at the time he was injured. Daryel Express was an Ohio employer. It failed to pay any worker's compensation premiums. Therefore it was a non complying employer." (Appellant's Motion for Summary Judgment at 4.) The affidavit attached to his motion for summary judgment states: "On June 15, 2005, I was the driver for employer Daryel Express Trucking LLC, operating a 2000 Freightliner tractor, owned by Daryel Express Trucking LLC." (Affidavit at 1.) Later in the affidavit, appellant states: "I have recently received some workers compensation here in Ohio. My employer is an Ohio business, but did not pay any premium. The State is paying on the basis on [sic] a non complying employer." Id. *Page 18 
 {¶ 33} Appellant's deposition was taken on August 8, 2006. During the deposition, the following exchanges occurred:
 Q. After he trained you, did you get a job as a truck driver?
 A. Yeah.
 Q. With who?
 A. With Daryel Express.
(Depo. at 25.)
 Q. Okay. When you were hired there, they gave you the job, what is the first driving job that you ever did for them?
 A. To drive?
 Q. Yeah. After they hired you, did you drive the next day?
 A. Yes.
Id. at 32.
 {¶ 34} In responding to a question regarding the ownership of the trucks, appellant stated:
 Actually, the way I believe is the only Daryel I know the company was Daryel Express, but after that, I don't know. I am just employee.
Id. at 39.
 Q. When you hired [sic] for Daryel Express, did they give you any — did they have an employee handbook or anything like that? Any rules and regulations?
 A. They do, but I don't have them.
Id. at. 46. *Page 19 
 Q. And the last thing, just so we are clear on things because we are not going to be able to ask you again, at the time of this incident — this accident, you were an employee of Daryel Express?
 A. Yeah.
 Q. And you were working for Daryel when the accident occurred?
 A. Yes.
Id. at 128.
 {¶ 35} On November 9, 2006, Canal filed a combined memorandum contra to appellant's motion for summary judgment and a motion for summary judgment. Canal argued that at the time of the accident, appellant was an employee of Daryel Express acting within the scope of his employment, and, as such, appellant's claims were specifically excluded under the Policy. Thereafter, on January 4, 2007, appellant filed a "supplemental memorandum" in support of summary judgment and memorandum contra to Canal's motion for summary judgment, with a "Second Affidavit" of appellant attached. In this memorandum, appellant stated: "There is no evidence that the Plaintiff was an `employee' of Defendant Daryel Express Trucking," and goes on to explain the payment methods and other indicators suggesting that he was not an employee of Daryel Express. (Supplemental Memorandum, at 1.) In his second affidavit, appellant stated he was merely "occupying a vehicle owned by Daryel Express Trucking LLC." (Second Affidavit, at 1.)
 {¶ 36} As Canal argues, despite appellant's contentions to the contrary, the record establishes, by appellant's own admissions, that he was indeed an employee of Daryel *Page 20 
Express. Moreover, to the extent appellant filed the Second Affidavit in an attempt to alter or clarify his deposition testimony, it is clear that such a contradictory affidavit cannot create an issue of fact.Burt v. Harris, Franklin App. No. 03AP-194, 2004-Ohio-756, at ¶ 18, citing Luft v. Perry Cty. Lumber Supply Co., Franklin App. No. 02AP-559, 2003-Ohio-2305, ¶ 59, discretionary appeal not allowed by99 Ohio St.3d 1542, 2003-Ohio-4671 ("Where a [non-moving party] testifies to something in a deposition, inconsistent statements in a later affidavit cannot establish a genuine issue of material fact");Zacchaeus v. Mt. Carmel Health System, Franklin App. No. 01AP-683, 2002-Ohio-444, ("`[A] non-moving party cannot defeat a motion for summary judgment by creating an issue of fact through a contradictory affidavit,'" citing Schaeffer v. Lute [Nov. 22, 1996], Lucas App. No. L-96-045).
 {¶ 37} As noted by this court in MacDaniels v. Sovereign Homes, Franklin App. No. 06AP-399, 2006-Ohio-6149, "[a]n exception to this general rule may exist where the conflicting affidavit suggests that the affiant was confused at the time of the deposition or offers some reason for the contradiction with prior testimony." Id. at ¶ 18, citingHull v. Lopez, Scioto App. No. 01CA-2793, 2002-Ohio-6162. "However, where inconsistencies exist between statements in affidavits and prior deposition testimony `and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions * * * the affidavit does not create a genuine issue of fact which would preclude summary judgment.'" Id., quoting McDowell v. Target Corp., Franklin App. No. 04AP-408, 2004-Ohio-7196, at ¶ 12. *Page 21 
 {¶ 38} In his appellate brief appellant states: "The Plaintiff Basha in his deposition honestly stated he didn't really understand the legal relationship." (Brief at 20.) We, however, are unable to find evidence in the record to support this statement. Further, the record establishing appellant was an employee of Daryel Express consists of more than just appellant's deposition testimony, as it also includes appellant's answer with admissions, as well as appellant's first affidavit, all of which state appellant was an employee of Daryel Express. Therefore, we find no genuine issue of material fact relating to appellant's status as an employee of Daryel Express, and accordingly, overrule appellant's sixth assignment of error.
 {¶ 39} For the foregoing reasons, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BROWN and TYACK, JJ., concur.
[1] Though not raised by the parties, we take this opportunity to note the application of Ohio law to the matter at hand. Despite this accident having occurred in Arizona, this court has previously held that "a cause of action against an insurer arising out of an automobile accident and involving the interpretation of an insurance policy sounds in contract, not in tort, despite the fact that the triggering event was an automobile accident." Gustin v. USAA Casualty Ins. Co. (Feb. 13, 2001), Franklin App. No. 00AP-130, citing Fiste v. Atlantic Mut. Ins. Co.
(1994), 94 Ohio App.3d 165, 167. Under choice of law principles, Ohio law applies because the insurance policy was issued in Ohio to an Ohio entity. Id.
[2] Though appellant has yet to definitively state what his relationship was with Daryel Express, it appears he is asserting not that he was an employee, but rather that he retained the status of an independent contractor.
[3] Powers refers to an ICC Endorsement. As stated by the court inLynch, supra, "[an MCS-90 endorsement is often referred to as an ICC endorsement because its form was initially prescribed under statutes delegating some of the enforcement of their provisions to the Interstate Commerce Commission. However, the ICC was abolished by the ICC Termination Act of 1995, and its responsibilities were transferred to the Surface Transportation Board of the Department of Transportation. Public Law No. 104-88, Section 201, 109 Stat. 803, 932-934, December 1995. At that time, the registration and financial responsibility statutes at issue in this case were revised and renumbered. (In particular, Section 13906, Title 49, U.S. Code is similar in many respects to former Section 10927, Title 49, U.S. Code.)"
[4] We make no finding as to the appropriateness of a deposition by telephone in the event the claims against Ghalib proceed after the conclusion of this appeal and a new scheduling order is established. *Page 1