[Cite as *Richter v. Richter*, 2025-Ohio-880.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| ROBERT D. RICHTER, | : | |
| | | CASE NO. CA2024-08-105 |
| Appellee, | : | |
| | | O P I N I O N |
| | : | 3/17/2025 |
| - vs - | | |
| | : | |
| DALE S. RICHTER, ET AL., | : | |
| Appellants. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2017 11 2602


Michael J. Brandabur, for appellee.

Stephen C. Lane, and Gary A. McGee, for appellants.


**SIEBERT, J.**

{¶ 1}  Appellants, Dale S. Richter and China Richter (collectively, "Dale"), appeal the decision of the Butler County Court of Common Pleas confirming a commissioners' report and finding that real estate owned by Dale and appellee, Robert D. Richter, cannot be divided without manifest injury to its value.[1]  We affirm the trial court's decision.

---

1. The trial court also found the fair market value of the Property to be $690,000. Dale did not appeal the trial court's determination of fair market value.

## I. Factual and Procedural Background

{¶ 2}  Robert and Dale are brothers. They each inherited, from their father's estate, an undivided, one-half interest in a parcel of land ("the Property") situated in Wayne Township, located in Butler County, Ohio. The Property consists of 110.843 acres zoned for agricultural use and is improved with a dilapidated farmhouse and several outbuildings. The Property is pan-handle shaped, with only 27 feet of frontage on Trenton-Oxford Road and a 2700-foot access lane extending from the road to the main body of the Property. The access lane is only wide enough for a single vehicle to pass through in some sections.

{¶ 3}  In November 2017, Robert filed a complaint against Dale in the Butler County Common Pleas Court, which included a petition for partition of the Property pursuant to R.C. 5307.01, et seq. ("Partition Statute"). Following transfers of the larger case between the Butler County Court of Common Pleas General Division and the Probate Court, the General Division received the partition portion of the case on April 8, 2022.

{¶ 4}  On June 23, 2022, pursuant to R.C. 5307.06, the trial court appointed Commissioners Morrical, Campbell, and Combs to examine the Property and determine whether it could be equitably divided between Dale and Robert without manifest injury to its value. If the Commissioners found the Property could not be equitably divided, the court ordered that they set forth the basis for their finding and provide an appraised value of the Property, pursuant to R.C. 5307.09.

### First Report

{¶ 5}  On November 17, 2022, the Commissioners provided the court with a letter, which described the Property in some detail and expressed an opinion that its fair market value was $665,000. On December 1, 2022, the Commissioners added a letter from

Wayne Township administrator Daniel Hoit to their November letter. Hoit's addendum stated that "Wayne Township Zoning would not approve a lot split" on the Property because it did not have 200 feet of road frontage, which a Wayne Township zoning resolution required. The trial court journalized its receipt of the Commissioners' letter and Hoit's addendum[2] on December 5, 2022, and its intention to adopt the report unless either Dale or Robert filed objections within 14 days. On December 19, 2022, Dale filed objections to the First Report, asserting that it did not provide "sufficient factual analysis," and that the Property could be equitably divided.

<u>Supplemental Report</u>

{¶ 6}   Following a pretrial conference and a request from Dale and Robert, the Commissioners provided their Supplemental Report on January 24, 2023. The Supplemental Report advised the court that they had consulted with officials at the Butler County Building Department, who concurred with Hoit's addendum that the Property could not be split due to the road frontage issue. The Supplemental Report further advised the court that the Commissioners did not look at the Property or analyze a split after their inspection described in the First Report. However, it stated the Commissioners did not believe an "Appeals Board" would approve a split.

{¶ 7}   On February 16, 2023, the trial court journalized a notice of receipt of the Supplemental Report and indicated its intention to adopt it, along with the First Report, unless a party objected. On March 1, 2023, Dale filed objections to the Supplemental Report and sought an order from the trial court that the Commissioners be instructed to propose a subdivision of the Property and to allow him time to seek approval of a variance from the township's frontage requirement. Thereafter, the trial court held several pretrial

---

2. Collectively, "First Report."

conferences and ordered additional briefing.

Combs' Report

{¶ 8} On October 30, 2023, the trial court's magistrate issued an order ("Magistrate's Order") that the Commissioners reassess the Property with the assumption that a subdivision of the Property would be approved and report whether that subdivision could be accomplished without manifest injury to its value. If not, the magistrate ordered the Commissioners to advise the court of the reasons why they concluded the Property could not be equitably divided. If the Commissioners concluded the Property might be equitably divided, then further proceedings would be stayed to permit Dale to seek a zoning variance for the road frontage requirement.

{¶ 9} Commissioners Morrical and Campbell had various problems with continuing as appointed Commissioners. On January 31, 2024, the court ordered, with the agreement of Dale and Robert, that Combs would serve as the sole Commissioner from that point forward. Attached to this order was a report from Combs dated December 1, 2023, in which he proposed a subdivision of the Property into separately owned 50-acre and 60-acre parcels, with a shared .8430-acre parcel consisting of the access road. Combs' Report stipulated that the proposed split was subject to approval by the Wayne Township zoning authority and must be surveyed by a professional surveyor. The trial court further indicated that it would stay the matter, effective February 20, 2024, to allow Dale to apply to Wayne Township for a variance from its road frontage requirement, subject to any objections from either Dale or Robert relative to the stay or the report. But Dale did not seek a zoning variance—instead, he filed an objection to Combs' Report, as did Robert.

{¶ 10} The trial court thereafter discussed the issues with counsel, and by order of March 4, 2024, found "that an evidentiary hearing is necessary at this time to resolve

- 4 -

pending issues." The trial court noted that Dale and Robert wished to present expert testimony concerning "valuation and divisibility of the [P]roperty," set expert identification and expert report disclosure deadlines, and scheduled an evidentiary hearing for July 9, 2024.

<u>Evidentiary Hearing and Final Order</u>

{¶ 11} The evidentiary hearing proceeded as scheduled. The trial court heard testimony from Commissioner Combs, Devin Shobe as Robert's expert, and Thomas Sherick as Dale's expert. All three witnesses agreed that the Property could not be divided without approval of a zoning variance by Wayne Township. Combs testified that he did not believe the Property could be split based upon conversations he had with Butler County and Wayne Township zoning officials. Shobe noted in his report that the Property does not meet the 200-foot frontage requirement and that he contacted the Wayne Township Zoning Administrator, who told him a subdivision of the Property "would not be permitted." Sherick's report indicated a zoning change is "unlikely."

{¶ 12} On July 26, 2024, the trial court issued the order ("Final Order") Dale now appeals. The trial court noted that the Magistrate's Order sought to accommodate Dale's request that he be allowed to seek a zoning variance from the road frontage requirement. However, based upon the testimony presented at the evidentiary hearing, the trial court determined that proceeding in that manner was "not appropriate." The trial court found that the Property "cannot be presently divided based upon the Wayne [Township] zoning restrictions, and therefore, appraisal and election/sale pursuant to O.R.C. 5307.09 through 5307.11 is the only proper course of action." The trial court proceeded to determine that it must consider the Property's condition "as is" for purposes of partition. Therefore, the trial court disregarded the Combs' Report, adopted the First and Supplemental Reports together, and held that the Property "cannot be divided without

manifest injury to its value."

{¶ 13} Dale timely appealed the court's order and has raised one assignment of error for our review.

## II. Legal Analysis

{¶ 14} Assignment of Error No. 1:

> THE TRIAL COURT ERRED BY ISSUING ITS ORDER CONFIRMING REPORT OF COMMISSIONERS FINDING REAL ESTATE CANNOT BE DIVIDED MODIFYING REPORT OF COMMISSIONERS AS TO APPRAISED VALUE.

{¶ 15} In his single assignment of error, Dale asserts that the trial court erred by adopting the First and Supplemental Reports together and by finding that the Property cannot be divided. To that end, Dale raises three arguments for our consideration:

1) the trial court violated his right to due process by failing to provide notice that it would address issues regarding zoning variances at the evidentiary hearing;

2) the trial court's finding that the Property could not be divided was not supported by competent, credible evidence; and

3) the trial court should have allowed him the opportunity to obtain a zoning variance for the split proposed in Combs' Report.

This court disagrees with all three of Dale's arguments and overrules his assignment of error.

### Standard of Review and Partition Procedures

{¶ 16} "Although the right to partition is controlled by statute, it has long been held to be essentially equitable in nature." *Bryan v. Looker*, 94 Ohio App.3d 228, 231 (3rd Dist. 1994), citing *Russell v. Russell*, 137 Ohio St. 153, 157 (1940). In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy. *Redding*

*v. Cantrell*, 2022-Ohio-567, ¶ 19 (12th Dist.). Where the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and determine the outcome of each case individually. *Id.*

{¶ 17} The standard of review applicable to claims for equitable relief is abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Where there is competent, credible evidence to support the trial court's decision, there is no abuse of discretion." *Renz v. Renz*, 2011-Ohio-1634, ¶ 7 (12th Dist.).

{¶ 18} The Partition Statute sets forth the procedures for partition actions. A court of common pleas may appoint up to three commissioners to partition the estate in question. R.C. 5307.04. "In making a partition, the commissioner or commissioners shall view and examine the estate and, on their oaths and having due regard to the improvements, situation, and quality of the different parts, set it apart in lots that will be most advantageous and equitable." R.C. 5307.06. Thus, the Partition Statute imposes a mandatory duty on commissioners to come forward with a plan for the division of property. *McGill v. Roush*, 87 Ohio App. 3d 66, 75 (2d Dist. 1993), citing *Hendrix v. Hendrix*, 1981 WL 5176, *9 (12th Dist. Aug. 26, 1981).

{¶ 19} However, the Partition Statute provides that the commissioners may determine that, in their opinion, division is not possible without "manifest injury to the value of the property." R.C. 5307.09. Commissioners are not required to offer a plan of partition if they have made a good faith effort to make a most equitable partition but find they cannot, provided they furnish in their report a sufficient factual basis for concluding an equitable division of property is not possible. *See Simon v. Underwood*, 2017-Ohio-2885, ¶ 68 (2d Dist.), citing *McGill* at 77-79.

<u>Adequate Notice and Due Process</u>

{¶ 20} Dale first argues that the trial court failed to provide adequate notice that the evidentiary hearing would address zoning variance matters. Dale asserts that the Magistrate's Order, and the trial court's subsequent orders of January 31, 2024, and March 4, 2024, indicated that the evidentiary hearing's sole purpose was to determine whether the division of the Property, as proposed by Commissioner Combs, the sole remaining commissioner, was equitable and complied with the Partition Statute. Dale contends that he did not know he should address issues regarding road frontage and obtaining a zoning variance, believing they were reserved for a later time. We disagree with Dale and find he had adequate notice.

{¶ 21} The right to procedural due process is required by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State ex rel. Plain Dealer Publishing Co. v. Floyd,* 2006-Ohio-4437, ¶ 45. "Procedural due process requires the government to give reasonable notice and a meaningful opportunity to be heard to those whose interests in life, liberty, or property are adversely affected by a governmental action." *W. Chester Bd. of Trustees v. Speedway Superamerica, L.L.C.,* 2007-Ohio-2844, ¶ 35 (12th Dist.). Notice must be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Krusling v. Ohio Bd. of Pharmacy,* 2012-Ohio-5356, ¶ 13 (12th Dist.). "Whether the court has complied with due process is a matter of law that we review de novo." *In re C.L.W.,* 2022-Ohio-1273, ¶ 48 (12th Dist).

{¶ 22} The orders Dale cites indicated that zoning variance issues would be addressed together with proposed division of the Property. The Magistrate's Order clearly stated "[I]f the Commissioners conclude the [P]roperty can be equitably divided, consistently with the law, then Defendants, Dale S. Richter and China Richter, shall apply

to the Wayne Township Zoning Authority for any variances needed to subdivide the [P]roperty as recommended by the Commissioners." Combs' Report proposed a subdivision of the Property which assumed a variance of the frontage requirements would be approved. It stipulated that "the proposed split must be approved by Wayne Twp. Zoning and surveyed by a professional surveyor." Subsequently, in the trial court's January 31, 2024 order, the court notified Dale and Robert:

> Pursuant to the [Magistrate's Order], because the commissioner was able to propose a split of the [P]roperty, the Court intends to stay this matter so that [Dale], can apply to the Wayne Township Zoning authority for any variances *needed to subdivide the [P]roperty as recommended*. The court, however, will not issue an order of stay until February 20, 2024, to permit [either Dale or Robert the] opportunity to raise any additional objections relative to the report or the anticipated stay.

(Emphasis added.). Both Dale and Robert filed objections to Combs' Report.

**{¶ 23}** Finally, on March 4, 2024, the trial court journalized an order setting the evidentiary hearing. The order provided that "an evidentiary hearing is necessary . . . to resolve pending issues" and recognized that both Dale and Robert wished to present expert testimony "to address issues of valuation and divisibility" of the Property.

**{¶ 24}** The issue of whether the Property could be divided, assuming a zoning variance would be granted, had been a "pending" issue for at least a year and a half before the evidentiary hearing. Not only was the question of the Property's divisibility in light of the need for zoning variances a "pending issue," it was the *primary* pending issue left to be determined before proceeding to any question regarding valuation. The First and Supplemental Reports dealt with this question directly. Combs' Report was written with a specific assumption regarding a zoning variance. Both Dale and Robert solicited expert reports in advance of the evidentiary hearing that addressed the zoning variance question. And both experts testified regarding the zoning variance challenges underlying

the Property's division.

**{¶ 25}** Given the extensive history of this case dedicated to the zoning issues and the trial court's explicit reference to any "pending issues," Dale's argument he was not adequately notified this issue would be litigated at the evidentiary hearing strains credulity.

**{¶ 26}** We find Dale's first argument is without merit.

<u>Competent, Credible Evidence Supporting No Partition</u>

**{¶ 27}** Second, Dale argues that the trial court's finding that the Property could not be divided was not supported by competent, credible evidence. We disagree.

**{¶ 28}** In support of his argument, Dale cites Sherick's testimony that the partition would not negatively affect the value of the resulting parcels. However, Sherick's testimony during the evidentiary hearing also acknowledged there were "a lot of unknowns" related to setting the value of the Property. He also testified the frontage and setback zoning requirements for the Property were "a problem."

**{¶ 29}** The court appointed three competent, qualified Commissioners who each had experience in evaluating property, and they concluded that partition was not possible. Combs' testimony at the evidentiary hearing confirmed that his Report was written pursuant to the Magistrate's Order to partition assuming a zoning variance was granted, but in his opinion the Property could not be split based on the reasons stated in the First and Supplemental Reports.[3]

**{¶ 30}** When analyzing whether a partition would result in manifest injury, it is "sufficient for the commissioners to answer the question: why is it impossible to divide the

---

3. The trial court considered Combs' testimony regarding what Wayne Township and Butler County officials told him about the zoning difficulties only to the extent these conversations formed the basis of Combs' testimonial opinion.

land?" *McGill*, 87 Ohio App. 3d at 77. Because commissioners exercise a "quasi-judicial" power in partition proceedings, their findings must be supported by "calculations or the facts themselves." *Id.* at 76-77. Cases of inequitable partition generally feature a commissioners' report that details one of two types of injury to the land value: (1) the sum of the divided property would be less than the value of the whole, or (2) the commercial use of property would be prevented upon partition. *Id.* This case more closely falls into the second category as the agricultural use of the Property is commercial. Even assuming partition would not harm the sum value of the parcels, the inability to comply with Wayne Township's Zoning would prevent *any* use of the parcels.

{¶ 31} Here, the Commissioners' First Report included a letter from Wayne Township administrator Daniel Hoit, advising that "Wayne Township Zoning would not approve a lot split on this [P]roperty" because it would have less than the required 200 feet of road frontage. Their Supplemental Report included confirmation from additional authorities that the division would not be approved. The Commissioners did not provide a comparison of the value of the partitioned land compared to the whole Property because their factual analysis led them to conclude the Property could not be partitioned under the applicable regulations. Therefore, the Commissioners completed their quasi-judicial duties by providing a factual basis for their conclusion. But the Commissioners' quasi-judicial role is "ultimately subject to court authority." *Id.* at 76. The court must ultimately exercise its judicial power by considering the Commissioners' report, issuing a writ of partition, or overseeing proceedings when the land cannot be divided. *See* R.C. 5307.05, 5307.09.

{¶ 32} As noted, the question of partition is equitable in nature and the trial court had broad discretion to fashion a fair remedy in this case. *See Redding*, 2022-Ohio-567 at ¶ 19. Here, the trial court properly exercised this discretion by appointing

commissioners, allowing extensive briefing, holding multiple conferences with Dale and Robert, permitting expert testimony, and holding an evidentiary hearing. The court's ultimate conclusion that the zoning authorities would not approve a zoning variance was supported by the factual evidence provided to the court.

**{¶ 33}** Dale's own expert reported that a zoning variance was "unlikely"—surely, Dale has not questioned his own expert's competency. The court deemed Shobe qualified to testify as Robert's expert. The testimony of Combs, Shobe, and Sherick at the evidentiary hearing indicated that a zoning variance was "a problem," had a lot of "unknowns," and was not likely to be approved due to the road frontage issue. Finally, the evidence supported the fact Dale would need a *substantial* variance—a subdivision of the Property would require that each lot have 200 feet of frontage for a total of 400 feet—but the Property has only 27 feet of frontage.

**{¶ 34}** The First and Supplemental Reports, the experts' reports, and the evidentiary hearing testimony on both the likelihood and extensiveness of the variance required supported the court's conclusion that the Property could not be subdivided without manifest injury to its value.[4] Far from acting in an unreasonable, arbitrary, or capricious manner, the trial court thoughtfully considered the evidence provided by the Commissioners and by Dale and Robert. By accepting this evidence, the court acted well within its discretion to reach its conclusion regarding the Property.

**{¶ 35}** We find Dale's second argument is without merit.

---

4. In reaching its decision in its Final Order, the trial court ruled that R.C. 5307.09 requires a court to assess a parcel "'as is,' without consideration of any contingencies" when assessing whether it can be divided. Neither Dale nor Robert has appealed this interpretation of the statute, and this court expresses no opinion whether a trial court may consider contingencies when assessing a division of property. Nevertheless, the trial court clearly determined that appraisal and election/sale were necessary because the Property's zoning would not permit a subdivision, and the zoning authorities were unlikely to grant the needed variances. The trial court's discussion of whether it could consider the Property in any condition other than "as is" is dicta and does not serve as the basis of its decision finding the Property may not be divided.

Opportunity to Obtain a Zoning Variance

{¶ 36} Third, Dale argues that the trial court erred in deciding to reject its earlier rulings that Dale would be allowed to seek zoning approval for the split proposed by Combs. Dale asserts that the Commissioners' First and Supplemental Reports failed to conform with R.C. 5307.06 because they did not attempt to propose a split and instead only provided an appraisal. Dale maintains it was inappropriate for the court to adopt these reports. Instead, Dale contends that the trial court had to permit him to pursue a zoning variance through Wayne Township's process. We disagree with Dale. The trial court was under no obligation to provide him with additional time to seek a zoning variance, and Dale did nothing to seek a variance with the opportunities and time he did have.

{¶ 37} As stated above, commissioners are not required to offer a plan of partition if they provide a sufficient factual basis for concluding an equitable division of the Property is not possible. *See Simon*, 2017-Ohio-2885 at ¶ 68. The difficulties with dividing this Property have been analyzed by various courts since at least 2022. Even when Dale had Combs' Report and the Magistrate's Order permitting him to seek the variance he claims to want, Dale did not seek this variance. Instead, he objected (again) to the division of lots, while offering no alternative proposals.

{¶ 38} This Court's precedent firmly establishes that a trial court retains control over the disposition of its trial docket and that control falls within the sound discretion of the trial court. *See Paramount Parks, Inc. v. Admiral Ins. Co.*, 2008-Ohio-1351, ¶ 37 (12th Dist.); *State ex rel. Charvat v. Frye*, 2007-Ohio-2882, ¶ 23. This case had been pending for nearly seven years with very little progress when it came before the trial court for the evidentiary hearing on July 9, 2024.

{¶ 39} Dale knew that road frontage would be an issue for obtaining a zoning

variance as early as December 5, 2022, when the trial court journalized its notice of receipt of the First Report. Nothing prevented Dale from applying for a variance conditioned upon the trial court's partitioning the Property, and Dale even received the court's affirmative blessing to do so. But in the seven years of litigation, Dale never sought the needed variance. Enough was enough—the trial court was under no obligation to defer the partition proceedings any longer.

{¶ 40} Given the reams of competent, credible evidence and testimony before the trial court, it did not abuse its discretion when it determined that "the [P]roperty subject of this case cannot be presently divided based upon the Wayne Township zoning restrictions, and, therefore, appraisal and election/sale pursuant to O.R.C. §§5307.09 through 5307.11 is the only proper course of action."

{¶ 41} Dale's third argument is without merit.

### III. Conclusion

{¶ 42} We overrule Dale's single assignment of error and find the trial court did not err in finding the Property cannot be divided without manifest injury to its value.

{¶ 43} Judgment affirmed.

BYRNE, P.J., and POWELL, J., concur.